IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-30015 |
| | ) | |
| GARRETT R. MAYNOR, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, United States District Judge:

Garrett R. Maynor moves for compassionate release.

I.

The Defendant pled guilty to one count of Manufacture of a Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(C) and was sentenced on January 10, 2011 to 168 months' imprisonment, followed by six years of supervised release.  He has been in custody since February 21, 2010 and, according to the Bureau of Prisons website, has a projected release date of February 7, 2022.  Maynor was recently transferred from FCI Milan to the Residential Reentry Management ("RRM") Orlando.

1

Maynor, who is 57, suffers from hypertension, for which he takes three daily medications, and which has been identified by the CDC as a chronic health condition that can make him more likely to get severely ill from COVID-19. *See* www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Maynor has also experienced numerous serious infections in recent years, including MRSA and Staphylococcus that required long-term antibiotics, immunosuppressive therapy and corticosteroids. He has had three back surgeries since 2016 and required hospitalization for treatment of MRSA or staph after each one. On one occasion, he required an approximate 50-day hospitalization. Maynor now has several calcified granulomas in his lungs that are four to five centimeters in diameter (about the size of a golf ball) that cause him shortness of breath. He also has sleep apnea. His medical records indicate that his heart rate has been in the normal to slightly elevated range and his condition is stable. Although only hypertension among his conditions has been identified by the CDC as potentially placing him at risk, Maynor notes that the combination of conditions could serve to enhance that risk.

Maynor asks for compassionate release or an order that he serve the remainder of his sentence in home confinement as a condition of supervised release as an alternative to a dormitory-style halfway house where there likely is a greater risk of

contracting COVID-19 such as RRM Orlando.  If released, Maynor would live with his aging parents and a brother who suffers from cancer in Ponce de Leon, Florida.

II.

Under the First Step Act, signed into law on December 21, 2018, defendants may now file motions for compassionate release after first exhausting administrative remedies within the BOP.  *See* 18 U.S.C. § 3582(c)(1)(A).  The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See*  18 U.S.C. § 3582(c)(1)(A).  If properly invoked by the Government, the exhaustion requirement must be enforced.  *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

There is no dispute that Maynor has met the statutory exhaustion requirement.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions.  *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, there is no "applicable" policy statement concerning the expanded compassionate-release provision. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). "The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id*. Until U.S.S.G. § 1B1.13 is amended, there is not an "applicable" policy statement for courts to rely on in considering prisoner-initiated applications for compassionate release. *See id*. at 1181.

The Court does find that the still existing pandemic and Maynor's hypertension, along with his age and other medical conditions, including lung masses and his recent history of infection, present extraordinary and compelling reasons.

In terms of the applicable sentencing factors, Maynor has a lengthy criminal history which includes convictions for battery, violation of an order of protection, animal cruelty, and multiple drug offenses, including a prior Illinois state law conviction for delivery of methamphetamine and a federal conviction for manufacturing methamphetamine. Two years after his release, a petition to revoke was filed and Maynor admitted to the allegations in 2005 and was sentenced to 45 months in BOP custody. The same conduct resulted in a state law conviction for

possession of a controlled substance, for which Maynor was sentenced to 30 months imprisonment. Accordingly, deterrence from further criminal activity and protection of the public from further crimes of the Defendant are important considerations.

Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should consider post-offense developments under § 3553(a). The Compassionate Release Memorandum states that he was classified as a medium-risk recidivism level in 2019. Maynor's disciplinary record consists of five incidents during his current BOP term. Four of the incidents were for refusing work/program assignment or refusing to obey an order. The most recent infraction occurred in June 2020 when he was sanctioned for misusing authorized medication. There were also two disciplinary incidents when he was serving a prior term in connection with the supervised release revocation in his previous federal case.

In a supplement to the motion, Maynor states that he was told by BOP staff that his PATTERN score would be minimal and he would thus be eligible for early release to home confinement, but for one criminal history point in his PSR for a 2010 Retail Theft offense that should not have been assessed because the charge did not result in conviction. Maynor states he was told by BOP staff that without that point, he would have been assessed a PATTERN SCORE of low and, having been scored as a minimal security risk, he would have been eligible for release pursuant to BOP's home confinement policy. The Defendant's supplement provides that although

counsel has no records that support the BOP official's statement, it may well be that the remaining criminal history points are too old to be considered by BOP in determining Maynor's PATTERN SCORE because the convictions are more than 15 years old. However, it is undisputed that the offense should not have counted in calculating the criminal history points.

The Government correctly notes that the compassionate release statute provides no basis for a defendant to attempt to relitigate matters addressed at his original sentence. As *Gunn* provides, the statute sets the standard so there is nothing precluding the Court from considering whether that error, along with other factors, provides extraordinary and compelling reasons for granting compassionate release.

The Government also notes that the decision whether to grant an inmate early release to home confinement or a halfway house is a matter solely within BOP's discretion. However, this Court may grant the Defendant's motion for compassionate release and order home confinement as a condition of supervised release.

### III.

Upon considering all of the applicable factors, the Court finds that compassionate release is appropriate in this case. Maynor has served over 133 months, which is almost 80% of his 168-month sentence. Based on his hypertension,

history of recent infections and age, the Court concludes Maynor has an enhanced risk of serious illness if he were to contract COVID-19 at RRM Orlando. In determining that compassionate release is warranted, the Court also is accounting for the likelihood that Maynor would have been eligible for home confinement based on the BOP's standards were it not for an erroneously assessed criminal history point at sentencing.

Upon considering the § 3553(a) factors, Maynor's lengthy criminal history and the possibility of recidivism is certainly a concern. That concern would exist whether Maynor is released now or in February 2022. However, the Court concludes that a modification of his conditions of supervised release will alleviate those concerns for what otherwise would be the remainder of his BOP term.

Ergo, Defendant Garrett R. Maynor's Amended Motion for Compassionate Release [d/e 49] is GRANTED.

The Defendant's imprisonment term is reduced to time served plus 72 hours.

The Clerk will terminate the Defendant's pro se motion [d/e 45] as moot.

The Clerk will also terminate the Defendant's supplemental motions [d/e 50, 54 & 55].

The Clerk shall send a copy of this Order to the United States Probation Office.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend nine months in home confinement, with the first 14 days to be spent in isolation. The home confinement shall start as soon as possible after his term of supervised release begins. Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation Office is able to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to immediately test Defendant for COVID-19. The Bureau of Prisons shall advise the U.S. Probation Office of the results of the test and, further, the Bureau of Prisons is also ORDERED to release Defendant once he has tested negative for COVID-19.

The Defendant must self-quarantine for a period of 14 days beginning at the time of his release.

The Clerk is DIRECTED to send a copy of this Order to RRM Orlando, Residential Reentry Office, 6303 County Road 500, Wildwood, FL 34785.

ENTER: March 31, 2021

    FOR THE COURT:

                                            /s/ *Richard Mills*
                                            Richard Mills
                                            United States District Judge